# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Charles Tufano and Richard Warren, as the representatives of a class of similarly situated persons, and on behalf of the Pride Mobility Employee Stock Ownership Retirement Plan,<br><br>      Plaintiffs,<br><br>    v.<br><br>Pride Mobility Products Corporation and the Pride Mobility Products Corporation ESOP Committee,<br><br>      Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT** |

# NATURE OF THE ACTION

1.      Plaintiffs Charles Tufano and Richard Warren, as the representatives of the Class described herein, and on behalf of the Pride Mobility Employee Stock Ownership Retirement Plan (the "ESOP"), bring this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Pride Mobility Products Corporation ("PMPC") and the Pride Mobility Products Corporation ESOP Committee (the "Committee") (collectively, "Defendants"). This case is about Defendants' failure to prudently invest the non-employer stock assets of the ESOP. The foregoing injured Plaintiffs and the Class and violated Defendants' fiduciary duties under ERISA, 29 U.S.C. § 1104(a)(1).

# PARTIES

2.      The ESOP is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A); a "defined contribution plan" as defined by 29 U.S.C. § 1002(34) (also known as an "individual account plan"); and an "employee stock ownership plan" as defined by 29 U.S.C. § 1007(d)(6). The ESOP is sponsored by PMPC for the benefit of its employees.

3.      Plaintiff Charles Tufano is a natural person and a resident of Archer, Florida. He worked for PMPC between around 1996 and 2019 and participated in the ESOP. His ESOP distribution would have been higher if not for Defendants' fiduciary mismanagement.

4. Plaintiff Richard Warren is a natural person and a resident of Wyoming, Pennsylvania. He worked for PMPC between around 2000 and 2020 and participated in the ESOP. His ESOP distribution would have been higher if not for Defendants' fiduciary mismanagement.

5. The Committee is the ESOP's governing body established by the written terms of the ESOP. The Committee is responsible for establishing the ESOP's investment strategy, determining the appropriateness of ESOP investments, and monitoring ESOP investments. Accordingly, the Committee is a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i). Upon information and belief, the Committee consists of high-ranking officers of PMPC.

6. Defendant PMPC is the sponsor of the Plan. Acting through its Board of Directors, PMPC appoints and has the power to remove members of the Committee. As a result of its authority to appoint and remove fiduciaries of the ESOP, PMPC is itself a fiduciary pursuant to 29 U.S.C. § 1002(21)(A)(i), (iii).

## JURISDICTION AND VENUE

7. Plaintiffs bring this action pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), which provide that a participant in an employee benefit plan may pursue a civil action on behalf of the plan to obtain monetary and appropriate equitable relief.

8. This case presents a federal question under ERISA. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

9. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because Defendants' violations of ERISA occurred in Luzerne County, Pennsylvania where PMPC is located and where the ESOP is administered.

**DEFENDANTS' ACTIONS AND OMISSIONS WITH RESPECT TO THE ESOP'S OTHER INVESTMENTS ACCOUNT**

10. PMPC established the ESOP in 1998 to provide retirement benefits to employees. The ESOP averaged around 930 participants with account balances during the subject period.[1]

11. The ESOP has two accounts: PMPC stock and other investments. The other investments are known as the "Other Investments Account" ("OIA").

12. Each participant's account value is equal to their *pro rata* share of the ESOP's total asset value. Each participant's benefit amount is equal to their account value at the time that it is distributed from the ESOP.

13. Participants are credited with shares of PMPC stock and a *pro rata* share of the OIA balance. Participant balances grow through appreciation of PMPC stock, payment of PMPC stock dividends, and the earnings of OIA investments.

14. Participants have no control over how their individual accounts are invested. Participants rely on Defendants to prudently invest all ESOP assets for the purpose of increasing the value of their individual accounts.

---

[1] ERISA claims cover six years from the date of filing. *See* 29 U.S.C. § 1113(1).

15. Prior to 2017, Defendants reinvested participants' PMPC stock dividends in PMPC stock. Defendants accomplished this by causing the ESOP to use current participants' cash dividends to repurchase shares of PMPC stock from departing participants. Defendants then reallocated the repurchased shares to the accounts of the current participants whose cash dividends were used to the complete the repurchases.

16. A hypothetical illustration of dividend reinvestment at the individual participant level is as follows:

*Illustration A: Reinvestment of Cash Dividends in PMPC Stock*

|  | PMPC Shares at Start of Year | Cash Value Per PMPC Share | Cash Dividend Per PMPC Share | Total Cash Dividend | PMPC Shares Repurchased with Cash Dividend | PMPC Shares at End of Year |
|---|---|---|---|---|---|---|
| Participant A | 100 | $25.00 | $2.00 | $200.00 | 8 | 108 |
| Participant B | 150 | $25.00 | $2.00 | $300.00 | 12 | 162 |

17. Defendants stopped reinvesting participants' cash dividends in PMPC stock in 2017. In that year and each year since,[2] participants' PMPC stock dividends were instead invested in the OIA.

18. The OIA balance has grown to more than $4.7 million. The increase in the OIA balance each year since 2017 represents (i) the addition of all PMPC

---

[2] The ESOP is required to file annual financial statements with the Department of Labor (DOL). The statement concerning the ESOP's financial condition as of December 31, 2022 is its most recently filed report. The next report concerning the period January 1, 2023 to December 31, 2023 is expected in late 2024.

-4-

stock dividends, (ii) the investment earnings of the account, and (iii) deductions for OIA balances distributed to departing participants.

***Illustration B: Growth of OIA Balance Since 2017***

| Date | OIA Balance |
|---|---|
| 12/31/2022 | $4,777,394 |
| 12/31/2021 | $4,421,375 |
| 12/31/2020 | $3,690,770 |
| 12/31/2019 | $3,136,259 |
| 12/31/2018 | $2,542,396 |
| 12/31/2017 | $1,645,095 |

19. Defendants kept the OIA invested exclusively in cash equivalents and ultra short-term bonds during this time. Returns on these investments were negligible. Between 2018 and 2022, the OIA earned a total of $168,544, or around 1.07% per year. On information and belief, the OIA is still invested exclusively in cash equivalents and ultra short-term bonds.

20. The Committee's investment of the OIA is imprudent. Cash equivalents and ultra short-term bonds are appropriate only if the investor has a short-term investment objective, needs to preserve their principal balance, and cannot tolerate market risk. Such investments are not a suitable replacement PMPC stock, which is focused on long-term capital appreciation.

21. A prudent fiduciary monitoring the OIA and the investment marketplace during the statutory period would have been aware of this fact. Cash equivalents and ultra-short-term bonds are the lowest yielding asset classes over the long-term.

*Illustration C: Major Asset Classes, 10-Year Average Annual Returns, 2018-2023*[3]

| 2018 10-Year Avg. Ann. Return | 2019 10-Year Avg. Ann. Return | 2020 10-Year Avg. Ann. Return | 2021 10-Year Avg. Ann. Return | 2022 10-Year Avg. Ann. Return | 2023 10-Year Avg. Ann. Return |
|---|---|---|---|---|---|
| Mid Cap Stocks 13.68% | Large Cap Stocks 13.56% | Large Cap Stocks 13.88% | Large Cap Stocks 16.55% | Large Cap Stocks 12.56% | Large Cap Stocks 12.03% |
| Large Cap Stocks 13.12% | Mid Cap Stocks 12.72% | Mid Cap Stocks 11.51% | Mid Cap Stocks 14.20% | Mid Cap Stocks 10.78% | Mid Cap Stocks 9.27% |
| Small Cap Stocks 11.97% | Small Cap Stocks 11.83% | Small Cap Stocks 11.20% | Small Cap Stocks 13.23% | Small Cap Stocks 9.01% | Small Cap Stocks 7.16% |
| High Yield Corp Bonds 11.12% | Long-Term Corp Bonds 7.99% | Long-Term Corp Bonds 8.24% | International Stocks 7.84% | International Stocks 4.59% | High Yield Corp Bonds 4.60% |
| Long-Term Corp Bonds 7.40% | High Yield Corp Bonds 7.57% | Long-Term Treasury Bonds 7.80% | High Yield Corp Bonds 6.83% | High Yield Corp Bonds 4.03% | International Stocks 4.32% |
| International Stocks 6.24% | Long-Term Treasury Bonds 7.01% | High Yield Corp Bonds 6.80% | Long-Term Corp Bonds 6.42% | Long-Term Corp Bonds 2.13% | Long-Term Corp Bonds 3.88% |
| Interm-Term Corp Bonds 4.84% | International Stocks 5.32% | International Stocks 5.19% | Long-Term Treasury Bonds 4.51% | Interm-Term Corp Bonds 1.75% | Interm-Term Corp Bonds 2.46% |
| Long-Term Treasury Bonds 4.09% | Interm-Term Corp Bonds 4.25% | Interm-Term Corp Bonds 4.18% | Interm-Term Corp Bonds 3.53% | Ultra Short-Term Bonds 0.91% | Long-Term Treasury Bonds 2.28% |
| Short-Term Bonds 1.52% | Short-Term Bonds 1.52% | Short-Term Bonds 1.60% | Short-Term Bonds 1.39% | Short-Term Bonds 0.88% | Ultra Short-Term Bonds 1.40% |
| Ultra Short-Term Bonds 0.54% | Ultra Short-Term Bonds 0.74% | Ultra Short-Term Bonds 0.81% | Ultra Short-Term Bonds 0.79% | Cash Equivalents 0.76% | Short-Term Bonds 1.27% |
| Cash Equivalents 0.37% | Cash Equivalents 0.58% | Cash Equivalents 0.64% | Cash Equivalents 0.63% | Long-Term Treasury Bonds 0.60% | Cash Equivalents 1.25% |

22.  Recent trends are consistent with longer trends. For 150 years in advanced economies throughout the world, stocks have beat investments in short-

---

[3] Asset classes are represented by the following indices: Large Cap Stocks—S&P 500; Mid Cap Stocks—S&P MidCap 400; Small Cap Stocks—Russell 2000; High Yield Corp Bonds—Bbg US Corp High Yield; International Stocks—MSCI World Ex US; Long-Term Corp Bonds—Bbg US Long Credit; Interm-Term Corp Bonds—Bbg US Interm Credit; Long-Term Treasury Bonds—Bbg US Long Treasury; Short-Term Bonds—Bbg US Gov/Credit 1-3Y; Ultra Short-Term Bonds—ICE BofA US 6M Trsy Bill; Cash Equivalents—ICE BofA US 3M Trsy Bill.

term government bills and cash deposit accounts by around 6% per year on average.[4]

23. Investments in non-PMPC stocks and other major asset classes were available to Defendants throughout the subject period. Defendants could have invested OIA funds in each asset class listed in Illustration C, *supra*, by selecting a passively managed fund that tracks the corresponding index. Defendants also could have selected an actively managed fund that seeks out the best individual securities within the asset class.

24. Defendants did none of these things and failed to consider other asset classes or implement a prudent long-term investment strategy for the OIA.

25. The "consensus" asset allocation decisions of professional retirement portfolio managers further illustrate Defendants' imprudence. A common investment for defined contribution plan participants is called a "target date" fund. Around 60% of 401(k) plan participants invest in them.[5] In a target date fund, professional portfolio managers allocate assets between asset classes based on the number of years the fund's investors have until retirement.

---

[4] *See* Jordà, Òscar *et al.*, "The Rate of Return on Everything, 1870-2014", 134 Q.J. ECON. 1225, 1228-30, 1234, 1241, 1280-81 (2019).

[5] *See* Holden, Sarah *et al.*, "401(k) Plan Asset Allocation, Account Balances, and Loan Activity in 2020," EBRI Issue Brief, no. 576, and ICI Research Perspective, vol. 28, no. 11 (November 2022), *available at* https://www.ebri.org/content/401%28k%29-plan-asset-allocation-account-balances-and-loan-activity-in-2020 (last visited May 7, 2024).

26. The industry consensus asset allocations are at least 90% stocks for 30-year time horizons, 80% stocks for 20 years, and 60% stocks for 10 years from retirement.[6] Even investors in retirement and using the fund for income distributions are allocated around 30% stocks, according to industry consensus. *Id.*

27. The behavior of prudent ESOP fiduciaries acting under similar circumstances is also illustrative. Prudent fiduciaries do not sideline non-employer stock assets in short-term assets, as Defendants have done. One approach is to allow participants to direct their OIA balances to funds that offer exposure to stocks and other asset classes (such as target date funds). This is accomplished by offering such funds within the ESOP, or by allowing participants to move balances to the company's 401(k) plan.

28. Even where the ESOP fiduciary retains sole investment control and the plan does not allow ESOP-to-401(k) transfers, Defendants' conduct is not the norm. When ESOPs accumulate excess funds not invested in employer stock, prudent and loyal ESOP fiduciaries invest the excess funds in assets that offer greater potential for long-term capital appreciation than ultra short-term bonds and cash equivalents.

---

[6] *See* Preston, Hamish, "S&P Target Date Scorecard," at 4, *available at* https://www.spglobal.com/spdji/en/documents/commentary/research-target-date-scorecard-year-end-2020.pdf (last visited May 7, 2024).

29. For example, fiduciaries of the Great Lakes Cheese Co., Inc. Employee Stock Ownership Plan kept approximately 95% of their plan's OIA assets invested in common stocks (directly or through pooled funds) during the subject period. The fiduciaries of the SCS Engineers Employee Stock Ownership Plan kept upwards of 60% of OIA funds invested in stocks (directly or through pooled funds). These ESOPs hold short-term assets only for limited periods before investing the funds pursuant to their overall investment strategy.

30. The cost of Defendants' failure to reinvest PMPC stock dividends pursuant to a prudent long-term strategy has been high. Between May 1, 2018 and December 31, 2022, Plaintiffs estimate that the OIA earned around $160,000 from Defendants' investments. Had Defendants invested the OIA in an index fund tracking the S&P 500 over the same period, Plaintiffs estimate that the ESOP would have earned around $1.62 million. Defendants' fiduciary neglect cost ESOP participants around $1.45 million during this period.

31. Measuring the ESOP's loss as of the date of its most recent annual report (December 31, 2022) likely understates the harm done. Stocks ended 2022 at a low point and have since rebounded. Assuming Defendants continued to invest the OIA exclusively in ultra short-term bond and cash equivalents, the ESOP's loss

stands at around $3.3 million (or higher) as of April 30, 2024.[7] The amount of loss should be updated at the time of trial.

32. Losses for ESOP participants will compound over time if Defendants' imprudence is allowed to persist. A 6% average annual return differential between cash and stocks over next 30 years will produce a deficit of around $43,000 for an ESOP participant with an average OIA balance of $5,300 today.[8]

33. Defendants cannot excuse their short-term investment strategy by characterizing the ESOP's risk tolerance as low, or the time horizon for OIA investments as short-term. Neither is true.

34. First, employee stock plans such as the ESOP invest primarily or exclusively in a single company's stock, which means that they have an aggressive

---

[7] This model assumes that the OIA earned 5.25% (annualized) since December 31, 2022, consistent with recent yields on cash equivalents and ultra short-term bonds, and compares that performance to a hypothetical investment of the OIA balance in a stock index fund tracking the S&P 500 during the same period. The model further assumes that there were no new dividends deposited in the OIA since December 31, 2022. If the principal balance of the OIA has increased since December 31, 2022, the total dollar amount of the loss to the ESOP would be higher.

[8] This calculation is based on the DOL's model for quantifying retirement savings losses. *See* Department of Labor, "A Look at 401(k) Plan Fees," at 2 (Sept. 2019), *available at* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited May 7, 2024). The model assumes no additional contributions are made to the account (and is thus conservative). Plaintiffs' adaptation of the DOL model assumes an 8% average annual rate of return on stocks and a 2% average annual rate of return on cash equivalents, consistent with the long-term historical average differential of around 6%. *See supra*, paragraph 22 and note 4.

risk tolerance. The ESOP's purpose is to provide a retirement benefit that will grow over time, not to preserve the value of the principal amount invested.

35. Second, the particular funds that Defendants deposit in the OIA are the same funds that Defendants formerly reinvested in PMPC stock—participants' dividends. Nothing changed about participants' investment objective for their dividends. It remains in participants' interest for their dividends to appreciate in value as long as they remain in the ESOP. In place of PMPC stock, Defendants needed to select another reinvestment vehicle focused on capital appreciation.

36. Third, long-term capital appreciation is the default objective of retirement investments. The Department of Labor, which oversees employee retirement plans, has instructed that "investments made on behalf of . . . participants ought to and often will be long-term investments," warning that overallocation to capital preservation strategies will "decreas[e] the likelihood that participants . . . have adequate retirement savings."[9] Aside from uncommon exceptions, ESOP participants may not use their account balances until reaching retirement age without incurring IRS penalties.

**PLAINTIFFS' LACK OF ACTUAL KNOWLEDGE**

37. Until shortly before filing this action, Plaintiffs lacked knowledge of material information to support these claims. Among other things, Plaintiffs lacked

---

[9] 72 Fed. Reg. 60452, 60463.

knowledge of how Defendants invested the non-PMPC stock portions of their accounts and the earnings of those investments relative to available alternatives. Plaintiffs also lacked actual knowledge of industry consensus asset allocations for retirement investments and the conduct of similarly situated ESOP fiduciaries who invest their plans' OIA funds in stocks and other asset classes. Plaintiffs also do not have actual knowledge of Defendants' fiduciary process concerning the OIA and have no means to access such information prior to discovery. Plaintiffs' allegations are based on inferences drawn from the facts adduced to date and are made upon information and belief and in reliance on the investigation of counsel.

## PLAN-WIDE RELIEF

38.  29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the ESOP pursuant to this statutory provision.

39.  Plaintiffs seek recovery for injuries to the ESOP sustained as a result of fiduciary breaches and seek equitable relief on behalf of the ESOP as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

40.  Plaintiffs are adequate to bring this derivative action on behalf of the ESOP, and their interests are aligned with other participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries

that would impair or impede their abilities to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation and intend to pursue this action vigorously on behalf of the ESOP.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

42. Plaintiffs assert these claims on behalf of a class of participants and beneficiaries of the ESOP defined as follows:

> All participants and beneficiaries of the Pride Mobility Employee Stock Ownership Retirement Plan since the date that is six years prior to the filing of this action.

43. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. The ESOP had hundreds of participants during the relevant period.

44. <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs participated in the ESOP and suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the ESOP.

45. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation,

including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

46. Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

   a. Whether Defendants were fiduciaries with respect to the ESOP and the scope of their fiduciary duties;

   b. Whether Defendants failed to comply with the ERISA fiduciary standards of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1);

   c. The proper form of equitable and injunctive relief; and

   d. The proper measure of monetary relief.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

48. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as

disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

49. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

50. Plaintiffs and undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**COUNT I**
**29 U.S.C. § 1104(a)(1)**

51. Plaintiffs incorporate paragraphs 2-36 by reference.

52. Defendant Committee is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

53. Defendant Committee violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the investment objectives of the ESOP and its participants.

54. Defendant PMPC violated ERISA fiduciary standards by failing to monitor the Committee's management of the Plan and failing to ensure that the Committee was investing the OIA with the care, skill, and diligence appropriate under the circumstances. Defendant PMPC further failed to mandate compliance or remove fiduciaries when the Committee failed to abide by its fiduciary duties.

55. Defendants' violations of 29 U.S.C. § 1104(a)(1) caused the ESOP injury in the form of lost investment earnings, and Defendants' deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect participants' ESOP accounts.

56. Each Defendant is also liable for the fiduciary breaches of the other under 29 U.S.C. § 1105 as a co-fiduciary.

57. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiffs, the ESOP, and the Class are entitled to recover losses caused by Defendants' violations of 29 U.S.C. § 1104(a)(1) and other equitable and injunctive relief.

**PRAYER FOR RELIEF**

58.     Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

   A.   Certify Plaintiffs' authority to seek plan-wide relief on behalf of the ESOP pursuant to 29 U.S.C. § 1132(a)(2);

   B.   Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiffs as class representatives, and certify undersigned counsel as class counsel;

   C.   Order Defendants to make good to the ESOP all losses resulting from their violations of ERISA;

   D.   Impose equitable and injunctive relief sufficient to protect ESOP participants, including changes to Defendants' investment process and/or appointment of independent investment advisors and managers;

   E.   Award Plaintiffs reasonable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

   F.   Award prejudgment and post-judgment interest; and

   G.   Award such other and further relief as the Court deems just and equitable.

                                     Respectfully Submitted,

Dated: May 7, 2024                   /s/Samuel J. Rosenthal
                                     Samuel J. Rosenthal, PA ID No. 50081
                                     **THE ROSENTHAL FIRM**
                                     1845 Walnut Street, Suite 2350
                                     Philadelphia, PA 19103
                                     Telephone: (215) 923-8900
                                     Facsimile: (215) 351-0593
                                     srosenthal@rosenthalfirm.net

**ENGSTROM LEE LLC**
Mark E. Thomson, MN Bar No. 398260*
Carl F. Engstrom, MN Bar No. 396298*
323 N. Washington Avenue, Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com

**Pro Hac Vice* Motion forthcoming

**ATTORNEYS FOR PLAINTIFFS**